IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EULA LAMAR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 12-0552-WS-C |
| | ) |
| THE HOME DEPOT, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the motion to dismiss filed by defendant Helmsman Management Services, LLC ("Helmsman"), (Doc. 48), in which motion co-defendant The Home Depot joins in part. (Doc. 67). The parties have filed briefs in support of their respective positions, (Docs. 48, 68, 71, 72), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion to dismiss is due to be granted in part and denied in part.

## BACKGROUND

According to the amended complaint, (Doc. 43), the plaintiff was employed by Home Depot when she sustained an on-the-job injury. She filed in state court a claim against Home Depot for worker's compensation benefits. This litigation was resolved some three years after the accident by a settlement agreement and judgment in the plaintiff's favor, which required Home Depot to provide medical benefits pursuant to Alabama Code § 25-5-77. Helmsman, the worker's compensation carrier for Home Depot, was a party to this agreement. Despite the settlement agreement and judgment, the defendants have failed or refused to provide medical benefits, including specifically treatment prescribed and recommended by the plaintiff's primary treating physician.

The amended complaint contains three counts: (1) breach of contract; (2) tort of outrage; and (3) fraud. Helmsman argues that all three claims are barred by the exclusivity provisions of Alabama's worker's compensation statutes. Helmsman also argues that the two tort claims are not pleaded in accordance with Rule 8(a) as construed by Supreme Court precedent and that the fraud claim is not pleaded in accordance with Rule 9(b). Home Depot joins only in Helmsman's pleading argument.

## DISCUSSION

**I. Exclusivity.**

"The Alabama Workers' Compensation Act, § 25-5-1 et seq., Ala. Code 1975, is intended to make workers' compensation the exclusive remedy for most job-related injuries." *Ex parte N.J.J.*, 9 So. 3d 455, 457 (Ala. 2008). This exclusivity is expressed within the Act in several places. *See* Ala. Code § 25-5-52, -53; *see also id*. § 25-5-14.

    **A. Breach of Contract.**

The only Alabama case cited by Helmsman for the proposition that exclusivity bars the plaintiff's claim for breach of a post-injury settlement agreement did not involve such an agreement. *See Pettaway v. Mobile Paint Manufacturing Co.*, 467 So. 2d 228 (Ala. 1985). However, such an agreement was at issue in *Glenn v. Vulcan Materials Co.*, 534 So. 2d 598 (Ala. 1988), *overruled in part on other grounds*, *Lowman v. Piedmont Executive Shirt Manufacturing Co.*, 547 So. 2d 90, 95 (Ala. 1989). In *Glenn*, the plaintiff sued his employer for breach of a judicially approved settlement agreement requiring the employer to pay the plaintiff's future medical expenses in accordance with the Act. *Id*. at 599. Without addressing exclusivity, the Supreme Court held that the employer was not entitled to summary judgment as to this claim. *Id*. at 602.

While *Glenn* is not dispositive (since it did not address exclusivity), it is more on point than Helmsman's authority.

Helmsman argues that, even though the plaintiff relies on a post-injury settlement agreement, the amended complaint alleges that the agreement required payment of future medical benefits "pursuant to section 25-5-77, Code of Alabama." (Doc. 43 at 2). Use of this language, it concludes, means that the plaintiff is really seeking benefits under the Act, such that its claim "is no different than" that in *Pettaway*. (Doc. 71 at 2). But *Glenn* likewise involved a settlement agreement that "obligated [the employer] to pay Glenn's future medical expenses in accordance with the Workmen's Compensation Act." 534 So. 2d at 599.

Exclusivity "do[es] not afford protection for injuries *not* caused by a job-related accident." *Lowman v. Piedmont Executive Shirt Manufacturing Co.*, 547 So. 2d 90, 93 (Ala. 1989) (emphasis in original). Just as an employer's post-accident pressure on its employee to file her disability claim as one for an off-the-job injury implicates an injury not caused by the initial, on-the-job injury, *id*. at 92, 93-94, a good argument could be made that a post-accident refusal to honor a post-accident contract implicates a new injury unprotected by exclusivity.

Moreover, Helmsman's argument, if accepted, would seemingly lead to curious results. By its rationale, an employer could enter a judicially approved settlement agreement to pay past worker's compensation benefits under the Act, then refuse to pay those agreed benefits and leave the employee with no remedy but to file a second worker's compensation case. Perhaps Alabama law dictates such an odd procedure, but Helmsman has not shown this to be the case.

The Court issues no definitive ruling as to the viability of the plaintiff's contract claim. Instead, it rules only that, on the meager argument and authority provided, Helmsman has not carried its burden of showing that the contract claim is barred by exclusivity.

**B. Tort Claims.**

The Alabama Supreme Court has found claims of outrage and fraud based on post-accident conduct not to be barred by the Act's exclusivity provisions. *See, e.g., Lowman*, 547 So. 2d at 93-95; *Continental Casualty Insurance Co. v. McDonald*, 567 So. 2d 1208, 1211 (Ala. 1990). Helmsman does not dispute these authorities. Instead, it argues that, although couched as claims of fraud and outrage, the plaintiff's claims are actually "disguised" claims of bad faith. Because bad faith claims are barred by exclusivity, *Wooley v. Shewbart*, 569 So. 2d 712, 717-18 (Ala. 1990), Helmsman concludes that the plaintiff's disguised bad faith claims are likewise barred. (Doc. 48 at 6-7 (citing *Hobbs v. Alabama Power Co.*, 775 So. 2d 783 (Ala. 2000)).

The "disguised" language on which Helmsman focuses was not in fact used by the Alabama Supreme Court but only by the trial court, whose opinion the appellate court quoted. 775 So. 2d at 787. At any rate, *Hobbs* appears to go no further than to say that an employer acting "within its proper role as an employer" cannot be liable for fraud. *Id*. at 789. Helmsman has neither asserted nor demonstrated that the amended complaint negates the plaintiff's ability to show that the defendants were acting outside their proper role.

Any such argument would be a hard sell. As the plaintiff notes, (Doc. 68 at 6), the fraud and outrage counts allege that the defendants refused to provide or pay for medical treatment recommended by the plaintiff's treating physician "with the intent and purpose of avoiding the medical expense of said treatment and/or to frustrate the Plaintiff to the point that she would be willing to consider settling her claim for future medical benefits and/or she would obtain this medical treatment through some other source which would result in financial benefit to the Defendants." (Doc. 43 at 4). As the plaintiff also notes, (Doc. 68 at 3), the *McDonald* Court ruled that a carrier's conduct in delaying payments to providers and refusing to pay for certain prescribed treatments, all in an effort to coerce the plaintiff into settling his medical claim for a small lump-sum payment, would

support an outrage claim not barred by exclusivity. 567 So. 2d at 1210-11. It seems unlikely that deliberately rejecting legitimate requests for medical treatment for the sole purpose of squeezing the injured employee into either settling for peanuts or going away entirely constitutes conduct within Helmsman's proper role as a worker's compensation carrier. Certainly it is worlds removed from *Hobbs*, where the employer, "based on medical advice, believed it was Hobbs's degenerative condition, not her on-the-job injury, that necessitated her surgery." 775 So. 2d at 789.

In short, on the argument and authority provided, Helmsman has not carried its burden of showing that the tort claims are barred by exclusivity.

**II. Pleading.**

Helmsman identifies no pleading deficiencies with respect to the contract count. Helmsman argues that the outrage claim fails to satisfy Rule 8(a) and that the fraud claim fails to satisfy both Rule 8(a) and Rule 9(b).

To survive dismissal under Rule 12(b)(6), a complaint must first satisfy the pleading requirements of Rule 8(a)(2). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). Rule 8 establishes a regime of "notice pleading." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 513-14 (2002). It does not, however, eliminate all pleading requirements.

First, the complaint must address all the elements that must be shown in order to support recovery under one or more causes of action. "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

5

Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2). The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" to satisfy that rule. *Twombly*, 550 U.S. at 555. There must in addition be a pleading of facts. Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level ...." *Id*. That is, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard … asks for more than a sheer possibility that the defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotes omitted). A complaint lacking "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" will not "survive a motion to dismiss." *Id*. But so long as the plausibility standard is met, the complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotes omitted).

Helmsman invokes *Twombly* and *Iqbal* and provides a similar, if truncated, summary of their principles. (Doc. 48 at 3-4). The question is their application.

**A. Outrage.**

As noted, the amended complaint alleges that the defendants refused to provide or pay for medical treatment recommended by the plaintiff's treating physician and that they did so for the purpose of either extracting a favorable settlement of her claim for future medical benefits or discouraging her from seeking such benefits at all. As also noted, *McDonald* suggests such conduct will support an outrage claim. Helmsman does not disagree, but it argues that the

6

plaintiff's allegations are mere "labels and conclusions" inadequate under *Twombly*. (Doc. 71 at 3-4, 5).

It is, however, Helmsman's unexplained ipse dixit that earns such a description. The amended complaint's allegations of what the defendants did and of what their motivation was in doing it are factual allegations, and they do not become impermissible labels and conclusions simply because additional factual allegations explaining and supporting the articulated factual allegations are not also included. As this Court has held, "the plaintiffs need not support those [pleaded] facts with secondary facts, tertiary facts, ad infinitum in order to satisfy Rule 8(a)(2)." *Howard v. Bayrock Mortgage Corp.*, 2010 WL 4628120 at *3 (S.D. Ala. 2010). This flows naturally from the principle that the plaintiff "need not prove [her] case on the pleadings – [her] Amended Complaint must merely provide enough factual material to raise a reasonable inference, and thus a plausible claim, that" the defendants committed the tort of outrage. *Speaker v. United States Department of Health and Human Services Centers for Disease Control and Prevention,* 623 F.3d 1371, 1386 (11th Cir. 2010). If, as is factually alleged, the defendants refused to pay for prescribed medical treatment and did so for the purpose of crushing her will to insist on her rights, then she has a plausible claim for relief under *McDonald*. And that is all Rule 8(a) requires. While Helmsman "may well desire elaboration of plaintiff's theory undergirding each alleged [claim], … Rule 8 does not mandate an exhaustive recitation of plaintiff's reasoning. That is a purpose of discovery." *Mahan v. Retrieval-Masters Credit Bureau, Inc.*, 777 F. Supp. 2d 1293, 1297 (S.D. Ala. 2011).

As noted, to survive dismissal a claim must include express or implicit allegations concerning every element of the claim. Among the elements of a claim of outrage is that the defendant's conduct "cause emotional distress so severe that no reasonable person could be expected to endure it." *Jenkins v. U.S. Fidelity & Guaranty Co.*, 698 So. 2d 765, 768 (Ala. 1997). The amended complaint alleges that the defendants' allegedly outrageous conduct caused the plaintiff to "suffer

physical pain and mental anguish," (Doc. 43 at 4), but Helmsman argues this allegation is fatally defective because it does not include the qualifier "severe." (Doc. 48 at 9). Helmsman cites no authority for the proposition that the omission of this adjective renders the claim subject to dismissal. Moreover, Helmsman ignores the principle that an "inferential allegation" of an element suffices, *Wilchombe*, 555 F.3d at 960, and it has not attempted to show that the allegations of the amended complaint fail to encompass at least an inferential allegation that the plaintiff's emotional distress was severe.

### B. Fraud.

The elements of a cause of action for fraud include reasonable reliance. *E.g., Mantiply v. Mantiply*, 951 So. 2d 638, 658 (Ala. 2006). Therefore, the amended complaint is subject to dismissal if it does not contain an express or inferential allegation of such reliance. Helmsman says it does not, (Doc. 48 at 11), and the Court agrees. The plaintiff offers no argument to the contrary. (Doc. 68 at 5-6).

Moreover, fraud must be pleaded "with particularity." Fed. R. Civ. P. 9(b). "We have held that pursuant to Rule 9(b), a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *American Dental Association v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (internal quotes omitted). "The plaintiff must allege facts with respect to each defendant's participation in the fraud." *Id.* Helmsman argues that the amended complaint fails this test at multiple points, (Doc. 48 at 11-12), and again the Court agrees. Again the plaintiff offers no defense of her pleading. (Doc. 68 at 5-6).

### III. Amendment of the Complaint.

The plaintiff requests leave to amend her complaint in order to correct any pleading deficiencies. (Doc. 68 at 6). The Court construes this as a motion for such relief. Helmsman objects on the grounds of untimeliness, (Doc. 71 at 6-7), and Home Depot joins in this objection. (Doc. 72).

When, as in this case, the time for amendment as of right has passed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, the plaintiff's motion was also filed past the deadline established in the scheduling order for such motions, and such "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *accord Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998).

"This good cause standard precludes modification unless the schedule could not 'be met despite the diligence of the party seeking the extension.'" *Sosa*, 133 F.3d at 1418 (quoting Fed. R. Civ. P. 16 advisory committee notes). Helmsman argues that the plaintiff should have noticed deficiencies in her pleading of her fraud claim and rectified them before the amendment deadline passed. But Helmsman ignores that, in the five months between the filing of the complaint and the amendment deadline, neither defendant moved to dismiss any part of her complaint.[1] Helmsman does not explain why a plaintiff must unilaterally move to amend a complaint that no defendant saw fit to challenge or be foreclosed by Rule 16(b)(4) when a later-named defendant (such as Helmsman) for the first time moves to dismiss after the amendment deadline has passed. The Court will not construct or support such an argument on Helmsman's behalf.

---

[1] The amended complaint, timely filed under the scheduling order, is essentially identical to the original complaint, except that it substitutes Helmsman for the entity originally named as Home Depot's worker's compensation insurance carrier.

9

## CONCLUSION

For the reasons set forth above, Helmsman's motion to dismiss is **granted** to the extent that the plaintiff's fraud claim is dismissed with leave to amend.  In all other respects, the motion to dismiss is **denied**.

For the reasons set forth above, the plaintiff's motion for leave to amend is **granted**.  The plaintiff is given leave to file a second amended complaint on or before **November 21, 2013**.  The only changes to the first amended complaint authorized by this order are to rectify pleading deficiencies with respect to the plaintiff's fraud claim.

DONE and ORDERED this 21st day of October, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE